UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SADIQ IMANI,

          Petitioner,

      v.                                Case No. 20-C-933

REED RICHARDSON,

          Respondent.

## SCREENING ORDER

Petitioner Sadiq Imani filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on June 22, 2020. Imani was convicted by a jury of armed robbery and false imprisonment in Milwaukee County Circuit Court. He was sentenced to 20 years of prison and 10 years of extended supervision on August 26, 2015. He timely filed a notice to seek postconviction relief, but his motion seeking such relief was not filed until February 8, 2018. The trial court denied his motion without an evidentiary hearing, and the Wisconsin Court of Appeals affirmed. The Wisconsin Supreme Court denied his petition for review on March 20, 2019. Imani is currently incarcerated at Stanley Correctional Institution.

I must give the case prompt initial consideration pursuant to Rule 4 of the Rules Governing § 2254 Cases, which reads:

> If it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time . . . .

Rule 4, Rules Governing § 2254 Cases. During my initial review of habeas petitions, I look to see whether Imani has set forth cognizable constitutional or federal law claims and exhausted available state remedies.

In his petition, Imani asserts that his trial counsel was ineffective because (1) counsel did not object to the use of a prior felony conviction to impeach Imani at trial, and (2) counsel advised Imani to testify when counsel knew a rebuttal witness would contradict Imani's alibi. The petition also asserts as a third ground for relief the claim that Imani's postconviction/appellate counsel was ineffective in failing to "detail or substantiate the cumulative prejudicial errors that occurred that cast doubt on the reliability of the outcome." It is clear from the face of the petition and the attached exhibits, however, that Imani is not entitled to relief.

The decisions of the trial court and the court of appeals describe the evidence presented at trial. A masked man armed with a silver handgun entered the TCF Bank in Milwaukee on August 2, 2013. He forced two employees into the vault and demanded money. After forcing one of the employees to handcuff the other, the robber fled in one of the employee's vehicles with $108,000 in U.S. currency. A surveillance system recorded the robbery, as well as the robber fleeing in the parking lot. A dye pack concealed with the money exploded in the area of the parking lot as the robber was fleeing. Police recovered the dye pack and the mask the robber was wearing. The mask was analyzed and found to contain male DNA. Days later, dye-stained money was recovered at the local casino. The two people using the money at the casino identified Imani as the person who had given it to them. DNA obtained from Imani pursuant to a search warrant was found to match the DNA that was found in the mask retrieved from the parking lot.

At trial, the state established the robbery occurred through the testimony of the bank employees and the surveillance recording. The bank employees were unable to identify the robber,

however, because he was wearing a mask. As a result, there was no eyewitness identification. Instead, the identification of Imani as the robber was made through DNA analysis.

A DNA analyst from the Wisconsin Crime Lab testified that the DNA found in the mask was identical to Imani's. The analyst testified that she swabbed the areas of the nose and mouth of the mask for DNA. Because the nose is a mucous membrane and the mouth constantly produces saliva, the analyst testified that these are areas where she would expect to find the robber's DNA, particularly since it had been worn for more than a few minutes during the course of the robbery. She testified that significant amounts of DNA were recovered, consistent with someone having worn the mask for a period of time, and a single source DNA profile was developed, meaning the DNA found in the mouth and nose area matched only one individual. The analyst testified that she was later given the DNA swab taken from Imani and found that it matched the single source DNA profile found in the mask. The State then rested.

Imani elected to testify in his defense that he was in Mississippi at the time of the robbery with a woman named Heather Deckow. Before he made the decision to testify, however, the State made clear that it intended to call Heather Deckow as a rebuttal witness if he testified. Imani's attorney also addressed with the court the number of prior convictions that would be admissible for impeachment purposes. Imani had three prior convictions, including a delinquency adjudication for burglary as a juvenile, a possession of firearm as a felon from 1999, and a misdemeanor possession of marijuana conviction from 2000. Unlike federal law, the applicable Wisconsin rule at the time did not place limitations on how recent the conviction needed to be to be admissible. Nor did it require that misdemeanors, to be admissible, needed to relate to credibility. Instead, admissibility of prior convictions was largely left to the trial court's discretion. Imani's attorney suggested that only the felony conviction should be admissible, but the trial court

3

allowed all three, reasoning that the juvenile adjudication was tied to the felony possession conviction and the State rule imposed no time limits.

Despite these obstacles, Imani testified that he was in Mississippi at the time of the robbery and that he had traveled there with Deckow. In rebuttal, the State called Deckow, who denied she had driven Imani to Mississippi prior to the robbery. The State also called the detective who interviewed Imani after his arrest and showed portions of the video recording interview that were inconsistent with his testimony. The jury found Imani guilty of both armed robbery and false imprisonment.

Imani's petition for federal relief is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the United States Supreme Court, or was "based on an unreasonable application of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315–16 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.*

A state court decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" when it is so clearly incorrect that it would not be debatable among reasonable jurists. *Brumfield v. Cain*, 576 U.S. 305 (2015) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that

4

does not suffice to supersede the trial court's . . . determination." (internal quotations and brackets omitted)). The determination of a factual matter made by a state court is presumed to be correct, and that presumption can be overcome only by clear and convincing evidence. § 2254(e)(1); *Janusiak v. Cooper*, 937 F.3d 880, 888 (7th Cir. 2019) ("The petitioner must show by clear and convincing evidence that the findings were unreasonable."). Although habeas courts cannot "second-guess the reasonable decisions of state courts," *Renico v. Lett*, 559 U.S. 766, 779 (2010), "deference does not imply abandonment of or abdication of judicial review . . . ." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *see also Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) ("[A] decision involves an unreasonable determination of facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence.").

This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Imani's petition clearly fails to allege facts sufficient to meet this standard. Moreover, the state court decisions he has filed with his brief demonstrate he is not entitled to federal relief. Those decisions show that both the trial court and the court of appeals properly applied clearly established federal law governing ineffective assistance of counsel in rejecting his claims. A claim of ineffective assistance of trial counsel is governed by well-established law set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, the petitioner must show that (1) counsel's representation was deficient in that it fell below an

5

objective standard of reasonableness and (2) counsel's deficient performance deprived the defendant of a fair trial. *Id.* at 687–88. A petitioner satisfies the first prong if he demonstrates that "counsel's representation fell below an objective standard of reasonableness." *Id.* To satisfy the second prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

"It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particularized act or omission of counsel was unreasonable." *Id.* at 689. For this reason, the Supreme Court has made clear that "judicial scrutiny of counsel's performance must be highly deferential." *Id.* That is, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and that "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Here, the state courts explicitly applied *Strickland* in reaching their decisions. The trial court reasonably concluded that Imani had failed to allege facts sufficient to satisfy either prong of *Strickland*'s two-pronged test for ineffective assistance of counsel. The court of appeals found it unnecessary to decide whether counsel was ineffective in light of the unique and compelling evidence of Imani's guilt. It thus concluded that Imani's claim failed because regardless of whether his attorney's performance was deficient in the manner claimed, the evidence was so overwhelming that the result would undoubtedly have been the same. Imani does not dispute the factual statements of either court. His challenge is to their reasoning and conclusions. Given the

6

deference that AEDPA and the *Strickland* standard requires, it is clear he is not entitled to federal relief. Accordingly, the petition will be summarily denied, and the case dismissed.

**THEREFORE, IT IS ORDERED** that this petition is summarily dismissed pursuant to Rule 4 of the Rules Governing § 2254 Cases. A certificate of appealability will be **DENIED**. I do not believe that reasonable jurists would believe that the petitioner has made a substantial showing of the denial of a constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Clerk is directed to enter judgment dismissing the case.

The petitioner is advised that the judgment entered by the Clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event the petitioner decides to appeal, he should also request that the court of appeals issue a certificate of appealability.

**SO ORDERED** at Green Bay, Wisconsin this 26th day of June, 2020.

s/ William C. Griesbach  
William C. Griesbach, District Judge  
United States District Court